# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAVID SCHAUER, #444664,

       Petitioner,

                                        Civil No: 06-CV-13434
                                        Honorable Arthur J. Tarnow
                                        Magistrate Judge Steven D. Pepe

v.

KENNETH MCKEE,

       Respondent.

_____/

## <u>OPINION & ORDER CONDITIONALLY GRANTING</u>
## <u>THE PETITION FOR WRIT OF HABEAS CORPUS</u>

     David Schauer, ("Petitioner"), presently confined at Bellamy Creek Correctional Facility in Ionia, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, in which he challenges his conviction for first-degree criminal sexual conduct, M.C.L.A. §750.520b(1)(b).  He was sentenced to fifteen to thirty years' imprisonment. Because of prosecutorial misconduct of vouching for complainant and due to defense counsel's ineffectiveness for not objecting to this conduct and not objecting to prejudicial hearsay evidence where the only evidence is the uncorroborated testimony of the complainant, the Petition for Writ of Habeas Corpus is  conditionally granted.

## I. BACKGROUND

     Petitioner was convicted following a jury trial in Livingston County Circuit Court.  His conviction arose from allegations that he sexually assaulted his teenage daughter, who was sixteen years of age at the time.  Although Petitioner  was charged and convicted of a single incident of sexual assault which occurred on the night of Petitioner's birthday, the

*Schauer v. McKee*
06-CV-13434

complainant, alleges that the incident was part of a pattern of sexual assaults dating back to when she was seven or eight years old.

Regarding the sexual assault of which Petitioner was convicted, the complainant testified that Petitioner entered her bedroom, which she shared with her sister, at about 10:30 p.m. on January 5, 2002. Complainant was awakened by Petitioner and noticed that her sister was no longer in the bedroom. Petitioner proceeded to engage in sexual intercourse with the complainant. Afterwards, Petitioner threatened the complainant and told her that if she told anyone about the sexual incident that he would hurt her or a member of her family. The complainant did not tell her mother, but instead wrote a note to her disclosing the sexual abuse. The complainant, however, was afraid to give the note to her mother and left it in her book bag. Her mother discovered the note and confronted the complainant about its contents. The complainant confirmed that she had been sexually abused by the Petitioner.

Petitioner filed an appeal of right and raised the following issues:

I. It was prejudicial error for the trial court to permit the complainant to offer extensive hearsay testimony regarding her alleged previous consistent statements, including reading verbatim her own written statements, and to permit numerous prosecution witnesses to offer additional extensive hearsay testimony regarding complainant's alleged previous consistent statements, where there was no evidence of a crime except for complainant's testimony, and her credibility, therefore was the only issue in the case.

II. Given the extremely prejudicial nature of the extensive hearsay testimony regarding complainant's alleged previous consistent statements, [Petitioner's] trial counsel was ineffective for failing to object to it.

III. In a trial that revolved around the complainant's credibility, it was prejudicial misconduct for the prosecutor to refer to herself as "your"

2

*Schauer v. McKee*
06-CV-13434

prosecuting attorney and to bolster complainant's credibility in closing argument by vouching for the complainant's testimony.

IV. Given the importance of complainant's credibility, [Petitioner's] trial counsel was ineffective for failing to object to the prosecutor's statements to the jury and to her vouching for the complainant during closing argument.

V. The trial court erred in scoring fifty points for OV 7 where complainant testified that after the alleged assault, [Petitioner] stated that "something bad" would happen to her or her family if she told, and OV 7 requires aggravated physical abuse on the order of terrorism, sadism, or extreme brutality in order to apply.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Schauer,* No: 247721, 2004 WL 1672450 (Mich. Ct. App. July 27, 2004).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same five claims as presented before the Michigan Court of Appeals, as well as the following claim:

[Petitioner] is entitled to resentencing because his sentencing guidelines range was enhanced on the basis of facts not proven to a jury beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments to the united States Constitution.

Relief was denied because the court  was "not persuaded that the questions presented should be reviewed by this Court."  *People v. Schauer,* 472 Mich. 923; 697 NW2d 156 (2005)(table).

Petitioner filed a motion for reconsideration of the Michigan Supreme Court's June 2, 2005 decision.  The Michigan Supreme Court denied relief "because it [did] not appear that the order was entered erroneously."  *People v. Schauer,* 474 Mich. 858; 702 NW2d

3

*Schauer v. McKee*
06-CV-13434

584 (2005)(table). However, Justice Kelly wrote that she "would grant reconsideration, and

on reconsideration, would hold this case in abeyance for *People v. Drohan, lv. gtd,* 472

Mich. 881; 693 NW2d 823 (2005)."

Petitioner now files a petition for writ of habeas corpus under 28 U.S.C. §2254

raising the following claims:

> I. The Michigan Court of Appeals agreed that inadmissible hearsay
> supporting the complainant's testimony was admitted at trial but declined to
> reverse because it found that Petitioner's attorney had a "strategy" based on
> admission of the hearsay statements. Given the limited evidence against
> Petitioner, however, no reasonable attorney would utilize a strategy that
> permitted admission of such prejudicial hearsay testimony, and Petitioner
> was denied the effective assistance of his attorney in violation of US Const,
> Am VI and XIV.

> II. In a trial that revolved around the complainant's credibility, it was a denial
> of Petitioner's rights to due process and a fair trial, US Constitution Am V, VI
> and XIV, for the prosecutor to refer to herself to the jury as "your" prosecuting
> attorney and to bolster the complainant's credibility in closing argument by
> vouching for the complainant's testimony.

> III. Given the importance of the complainant's credibility, Petitioner's trial
> counsel was ineffective for failing to object to the prosecution's statement to
> the jury and her vouching during closing argument, in violation of US Const,
> Am VI and XIV.

> IV. Petitioner is entitled to resentencing because the sentencing guidelines
> range was enhanced on the basis of facts not proven to a jury beyond a
> reasonable doubt, in violation of the Sixth and Fourteenth Amendments to
> the United States Constitution.

## II.  STANDARD

28 U.S.C. § 2254(d) imposes the following standard of review for habeas

cases:

4

*Schauer v. McKee*
06-CV-13434

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An

"unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409. A federal habeas

court may not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.

### III.  DISCUSSION

**A. Procedural Default
(Ineffective Assistance of Counsel &
Prosecutorial Misconduct Claims)**

In all cases in which a state prisoner has defaulted his federal claims in state court

pursuant to an independent and adequate state procedural rule, federal habeas review of

the claims are barred unless the prisoner can demonstrate cause for the default and actual

*Schauer v. McKee*
06-CV-13434

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the petitioner fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The last state court to issue a reasoned opinion addressing the claims regarding the ineffective assistance of counsel and prosecutorial misconduct in this case was the Michigan Court of Appeals which reviewed the claims only for plain error, because defense counsel did not object to the conduct. The contemporaneous-objection rule was firmly established and regularly followed with respect to claims of prosecutorial misconduct. See, e.g.,*People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 100, 435 N.W.2d 772, 775 (1989). The state court's reliance on Petitioner's failure to object to the prosecutor's conduct is an adequate and independent state ground for foreclosing review. *See Engle v. Isaac*, 456 U.S. 107, 110 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding).

The fact that the state court of appeals engaged in plain error review of Petitioner's claims involving ineffective assistance of counsel and prosecutorial misconduct does not

*Schauer v. McKee*
06-CV-13434

constitute a waiver of the state procedural default. *See Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Focusing his efforts on showing cause for the default, Petitioner asserts that ineffective assistance of counsel qualifies as "cause" in his case.  See *Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir.  2000) ("[I]neffective assistance of counsel can provide the necessary 'cause' for procedural default").   A party must prove that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668 (1984).  The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The strong presumption is that counsel "rendered adequate assistance."  *Id.* at 690.

The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland v. Washington*, 466 U.S. at 688 (additional internal quotations omitted). However, when assessing counsel's

*Schauer v. McKee*
06-CV-13434

performance, the reviewing court should afford counsel great deference. *Strickland*, 466

U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time" and that a convicted person who seeks to criticize his attorney's

performance "must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy'").

To prevail on his ineffective assistance of counsel claims, a habeas petition must

show that the state court's conclusion regarding these claims was contrary to, or an

unreasonable application of *Strickland.* See e.g., *English v. Romanowski,* 589 F.Supp.2d

893, 903 (E.D. Mich. 2008). The Supreme Court has held that "cause" under the cause

and prejudice standard must be "something *external* to the petitioner, something that

cannot be fairly attributed to him." *Coleman,* 501 U.S. at 753. . . . . Attorney error that

constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal

citations omitted).

Petitioner argues that his counsel failed to object to hearsay statements and to

statements representing unconstitutional prosecutorial misconduct. In order to show

prejudice under *Strickland,* Petitioner must "establish that but for the alleged error of his

trial counsel in not objecting . . . assuming that the prosecutor committed misconduct [and

that the statements were inadmissible hearsay] . . . there is a reasonable probability that

the result of the proceeding would have been different." *Hinkle,* 271 F.3d at 245. The

8

Schauer v. McKee
06-CV-13434

Court concludes that Petitioner has made such a showing.  Because Petitioner can establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, he can show ineffective assistance of counsel as "cause" to excuse procedural default of his prosecutorial misconduct claim, see *Hinkle,* 271 F.3d at 246.  The Court will therefore, consider the merits of Petitioner's claims.

### B. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel due to counsel's failure to object to certain alleged inadmissible hearsay statements at trial.  Specifically, Petitioner raises the following testimony to which Petitioner's trial counsel should have objected: (1) Complainant's verbatim reading of the note she left in her book bag and which her mother discovered; (2) Complainant's verbatim reading of her statement to Trooper Dennis Wayne Milburn; (3) Complainant's mother's testimony about the complainant's note that she found; (4) Her mother's testimony that the complainant "never waivered;" and (5) Troopers Milburn and Coulter's testimony regarding what complainant told them about the details of the alleged sexual assault.

Petitioner also claims that trial counsel was ineffective for failing to object to: (1) statements made in the prosecutor's opening remarks to the jury wherein she insinuated that the prosecutor represented the interests of the jury; and (2) alleged vouching by the prosecutor during her closing argument relative to the credibility of the complainant.

9

*Schauer v. McKee*
06-CV-13434

### 1.  Failure to Object to Inadmissible Hearsay

Regarding Petitioner's ineffective assistance of counsel claim relative to his allegation of objectionable and inadmissible hearsay statements, the Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim and stated as follows:

> Having reviewed the indicated portions of the record, we conclude that the two challenged sections of testimony from the victim's mother were admissible. Neither the testimony that the victim "never waivered" nor that she read a note that the victim had written that stated concerns regarding what defendant had done were testimony regarding an out-of-court statement offered for the truth. MRE 801(c). Further, failing to object to admissible evidence is not ineffective assistance of counsel. *People v Snider*, 239 Mich App 393, 424; 608 NW2d 502 (2000).
>
> With respect to the four remaining portions of testimony that defendant challenges on appeal as containing inadmissible hearsay, we conclude that defendant has not established outcome-determinative plain error, nor has he overcome the presumption of effective assistance of counsel. **At trial, the victim read out loud a note she had written to her mother and a statement she wrote for Trooper Milburn. Troopers Milburn and Coulter testified regarding the victim's oral statements during police interviews. While this evidence consisted of hearsay, we conclude that defense counsel's failure to object was a matter of sound trial strategy.** As evident from defense counsel's opening statement, defendant's theory was that the victim was not credible, that she had a motive to lie, and that there were inconsistencies in her story. As alluded to during his opening statement, defense counsel's apparent strategy was to allow in every out-of-court statement the victim made so that he could highlight the inconsistencies in her story to attack her credibility. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Given this record, we cannot say that defendant was denied effective assistance of counsel or that plain error affected defendant's substantial rights.

*Schauer*, 2004 WL 1672450, *1 (emphasis added).

*Schauer v. McKee*
06-CV-13434

The statement from the note that the victim wrote to her mother and that she was

directed to read aloud at trial is as follows:

Q: ... I'm going [to] have you take that and I'd ask that you start at the beginning and read the letter for us.

A: Okay.  On the top it says, "Mom" (reading):

Every (sic) since dad was – living in the house in Hell we – he started to have sex with me.  I told him to stop, and he will – he wouldn't not (sic).  I – I tell him that – what he has – that's what he has Mary for.  He says she's too fat to have sex with.

One night when I was sleeping, he came in, in my room, and started having sex with me, and he pinned me down and did not stop until he was done.

Every time I go over there to his house, when Mary is not in the room, he touches me where I do not want to be touched.  I tell him to stop.  And he says, "shh," like, be quiet.  And when Mary leaves the house to go where – to go wherever, he calls me into his room and tells me there is nothing wrong with what we are doing.  And I tell him, yes, it is.  And he says, no, it's not unless you tell anyone.

And I want to tell someone – someone but I get really upset and start to cry. I do not know what to do.  I feel if I tell someone he will try to hurt or kill me, and I do not want that to happen. I might not be able to see him again or for a long time, and I do not want that to happen.  I'm going to go to bed now. Love always, Rebecca. And  it says, P.S. What should I do?

Q: Did you also put a date on that, on the date that you wrote it?

A: Yes, it says "2-28-02".

(Tr., Vol. I, 1/15/03, at 176-77).

The statement from the note that the victim wrote to Trooper Milburn and from which

she was directed to read aloud at trial is as follows:

Q: And what do you recognize that to be?

*Schauer v. McKee*
06-CV-13434

A: The note that I wrote to Trooper Milburn and gave to him when we went – when he came to my school.

\* \* \*

Q: – if you could read that letter to us –

A: (Reading)

Every (sic) since I was seven – seven years old, my dad would have sex with me. I can still remember the first time he did it to me. When I woke up, he was on top of me – top of me with his penis in – in me.

Q: Is that – well, is that what it says right there in the letter?

A: No.

Q: What did you write? I need you to read exactly –

A: Okay

Q: – what you wrote in the letter.

A: (Reading)

When I woke up, he was – he was on top of me. His dick was in – in me and he was humping me, and I told him to stop. All he told me to do is, "shh," be quiet, and sometimes I would cover my – he would cover my mouth. He would have sex with me every time my step-mom and everyone else would leave. I do not know– I do not want to tell anyone because I was scared no one will believe me or my dad would get mad at me and throw things at me. Even – every time he would do that, I would hurt down in my --

Oh (reading):

Every time --

Hold on (reading):

12

*Schauer v. McKee*
06-CV-13434

Every time that would happen – every time that would happen, I would hurt down in my vagina.  I need – I don't remember what this word is, down there (indicating)

(Reading):

After he was done, he – release inside of me about three times and that's all I know.

And it says, [complainant's name], and the date's on it.

Q: And what was the date?

A: Three-twelve-0-two

Q: Thank you . . .

*Id.* at 185-87.

The complainant also made prior statements to Trooper Coulter which were allowed

into evidence through Trooper Coulter's testimony.  They are in pertinent part as follows:

Q: And what did she tell you?

A: She told me that, when she was seven or eight, her father started having sexual – she didn't – I don't think she said "sexual intercourse"  – starting having sexual relations with her.  I don't remember her exact terminology From there I asked her to,  you know, go into – tell me – well, tell me about that a little bit.  She said the first time she can remember was, again, when she was seven or eight and he came into her room while she was sleeping. And when she woke up, she had her underwear and her shorts off and her legs were spread and her father was on top of her naked, humping her.

*     *     *

A: She told me that it would happen every time that her step-mother would leave the house for errands and she – asked her how often she went to her father's house and she said she visited about every other weekend, sometimes it would be three weeks.

*     *     *

13

*Schauer v. McKee*
06-CV-13434

A: She told me that on one occasion he told her that if she told anybody he would kill her or he would go to jail and she would end up in foster care.
*   *   *
A: Okay (indicating) . She said that when she got a little older . Chlesea and her – Chlesea, her sister, shared a room.  And her father would come in the middle of the night, before he would leave for work, which is about three or four in the morning. that
*   *   *
Q: And what did she tell you about that incident?

A: There was a birthday party at the house and she was in her room.  She had gone to bed and her father came in and got on top of her again – took her clothes off – her shorts and underwear off and was on top of her and he was humping her, she indicated, for about three or four minutes.  And when he was done, she said he got off and got her clothes off the floor and threw 'em at her and said, roll over and go to sleep.

(Tr., Vol. II, 1/16/03, at 349-53).

Her mother's testimony likewise consisted of several hearsay statements throughout her direct examination from the complainant, Trooper Milburn, counselors, teachers, and her current husband.  (Tr., Vol. I, 1/15/03, at 288-91).

Petitioner's ineffective assistance of counsel claim entitles him to relief.  As the Michigan Court of Appeals noted in its opinion, the testimony from Troopers Milburn and Coulter regarding the complainant's oral statements was "evidence consist[ing] of hearsay." *Schauer,* 2004 WL 1672450, *1.  Defense counsel should have objected to the above referenced purported hearsay testimony. The Michigan Court of Appeals concluded that trial counsel was not ineffective in failing to object to this testimony because the testimony was either not hearsay under Michigan Rule of Evidence 801(d)(1)(C), or that trial counsel's failure to object was a matter of sound trial strategy.  *Schauer*, 2004 WL 1672450, *1.

14

*Schauer v. McKee*
06-CV-13434

In this case, the Court finds that the Michigan Court of Appeals' application of *Strickland* was not simply incorrect, but was objectively unreasonable, meeting the threshold required by the AEDPA. The challenged statements amounted to unfair and prejudicial misconduct plainly meriting an objection and curative instruction. Yet, defense counsel sat in silence. At the most pivotal moments, this Court concludes, his silence could not have been part of reasonable trial strategy. The Michigan Court of Appeals' assessment of the events was inadequate, failing to appreciate or even consider the critical issues involved.

Throughout its opinion, the state appellate court found that defense counsel's "failure to object was a matter of sound trial strategy" and that it "will not substitute its judgment for that of counsel regarding matters of trial strategy." *Schauer*, No. 2004 WL 1672450, *1.[1] This Court finds that the state appellate court failed to understand the concept of strategy and unreasonably applied that concept. "[T]he label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel." *Washington v. Hofbauer*, 228 F.3d at 704; (citing *Lovett v. Foltz*, No. 88-1682, 1989 WL 101522 (6th Cir. Sept. 5, 1989) (unpublished opinion).   In the present case, defense counsel's failure to object to the above referenced  hearsay evidence was clearly ineffective, because this evidence was cumulative, highly prejudicial, and portrayed Petitioner as guilty.  See *e.g., Washington v. Hofbauer,* 228 F. 3d at 704.  (counsel for defendant charged with acts of

---

[1] Neither counsel on oral argument in this Court requested an evidentiary hearing.  Petitioner counsel posited there was no valid strategy to allow the repetition of complainant's version.  Respondent said there was no error and if error it was strategy and harmless.

15

*Schauer v. McKee*
06-CV-13434

criminal sexual conduct against minor daughter of defendant's live-in girlfriend was ineffective in failing to object to acts of misconduct by prosecutor in improperly emphasizing evidence of defendant's "bad character" during closing argument).

Even with an articulated strategy, it does not explain why defense counsel failed to object to the admission of prior consistent statements of the complainant from other witnesses–it is error to admit corroborating hearsay in order to buttress the credibility of a complainant. *Tome v. United States*, 513 U.S. 150 (1995) (prior consistent statements of an alleged victim of child abuse were not admissible).  Respondent's counsel at a recent hearing in this matter could not articulate a hind-sight trial strategy except only to reiterate the Michigan Court of Appeals' position on the issue (i.e., allow the jury to hear all of the evidence and then identify  inconsistencies in an effort to attack the victim's credibility). (Hearing Tr., 6/23/09, at 3-4).  However, Respondent's counsel acknowledged that there were less objectionable means to get the complainant's prior statements into evidence, but that defense counsel chose not to exercise those options for reasons unbeknownst to her. *Id.* at 4.

In evaluating a claim of ineffective assistance of counsel, where there is relatively little evidence to support the guilty verdict to begin with, the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt. See *Brown v. Smith,* 551 F.3d 424, 434-35 (6th Cir. 2008); See also *Hodge v. Hurley,* 426 F.3d 368, 376 (6th Cir. 2005)(finding prejudice in sexual abuse case where there was no physical evidence, and case turned entirely on credibility of dueling witnesses);

16

*Schauer v. McKee*
06-CV-13434

*Washington,* 228 F. 3d at 707-08 (counsel's deficient performance in failing to object in prosecution for criminal sexual conduct to prosecutor's improper emphasis on evidence of defendant's bad character was prejudicial, where trial was a credibility contest). Because this case essentially boiled down to a credibility contest between the complainant and Petitioner, counsel's failure to object to the above referenced hearsay evidence prejudiced Petitioner. Cases of criminal sexual conduct involve a credibility contest, as there is usually no evidence in the record indicating a criminal defendant's guilt outside of a complainant's allegations. In this case, there was no medical evidence of the sexual assaults:

> [T]o the contrary, the prosecution's medical evidence somewhat contradicted the claim of intercourse. There were no witnesses to any of the alleged incidents . . . Further, complainant's allegations about he charged incidents were substantially undermined by the testimony of defense witnesses.

(Pet. at 24).

In short, defense counsel's failure to object to the above statements fell below an objective standard of reasonableness and constituted an omission outside the wide range of professionally competent assistance. Petitioner has demonstrated to this Court that the failure to object was not valid strategy. See, *Beasley v United States*, 491 F.ed 687 (6th Cir, 1974)(holding a strategy could be so bad as to amount to ineffective assistance of counsel).

> Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal [**27] defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial.

At 696.

*Schauer v. McKee*
06-CV-13434

The Court finds that the state appellate court's application of *Strickland* was objectively unreasonable.

Since there was no evidence outside of the substance of Petitioner's and the complainant's testimony, nothing was more important to the case than the *indicia* that one story was more believable than the other. Therefore, trial counsel's failure to place objections on the record relative to the hearsay testimony during trial would constitute ineffective assistance of counsel. The Court concludes that trial counsel was ineffective under *Strickland* and that the Michigan Court of Appeals' decision to the contrary is unreasonable. Habeas relief is granted on this claim.

### 2. Failure to Object to Prosecutorial Misconduct

Regarding Petitioner's ineffective assistance of counsel claims relative to his allegation of prosecutorial misconduct, Petitioner claims that trial counsel was ineffective for failing to object to: (1) statements made in the prosecutor's opening remarks to the jury wherein she insinuated that the prosecutor represented the interests of the jury; and (2) alleged vouching by the prosecutor during her closing argument relative to the credibility of the complainant.

The prosecutor's alleged misconduct very likely tipped the scales, and the defense counsel's failure to object to the ongoing misconduct and failure to request specific curative instructions most likely affected the outcome of the trial. Even with an articulated strategy, it does not explain why defense counsel did not object to the below referenced closing

18

*Schauer v. McKee*
06-CV-13434

remarks.  The risk of prejudice inherent in that strategy would have made a reasonably competent attorney doubly cautious about the potential misuse of that evidence.

For reasons set forth *infra*, the Court finds that the prosecutor engaged in misconduct relative to the challenged remarks made during her closing argument. Therefore, trial counsel's failure to place objections on the record regarding Petitioner's improper actions during closing argument constitute ineffective assistance of counsel. Habeas relief is granted on this claim.

### C.  Prosecutorial Misconduct

#### 1.  Introductory Remarks

Petitioner argues that the prosecutor committed misconduct during her introductory remarks to the jury when she introduced herself to the prospective jury before voir dire as "one of *your* assistant prosecuting attorneys," and referenced "*your* [p]rosecuting [a]ttorney, David Morse." Tr., 1/15/03, pg. 10 (emphasis added).

Specifically, the prosecutor's opening remarks were as follows:

> [Court]: With that then–also, I'll ask the attorneys to list the other attorneys in their offices so – in case you deal with any of those other attorneys.  I'll call Miss Maas first of all.
>
> Ms. Maas: Thank you your Honor.  Good Morning, ladies and gentlemen.  My name is Pamela Maas. **I am one or your assistant prosecuting attorneys.** I serve as an appointee of your Prosecuting Attorney, David Morse.  And I'd like to tell you who the names of the other attorneys are in our office: Our Chief Assistant Prosecuting Attorney is Don Garber; and the other Assistant Prosecutors are Suzanne Geddis, Bill McCririe, William Vaillencourt, Shawn Ryan, Marilyn Bradford, Stacy Combs, Stephanie Crino, Jim Metzing and Kari Hock.

Tr., 1/15/03, pg. 10.  (Emphasis added).

19

Schauer v. McKee
06-CV-13434

The Michigan Court of Appeals disagreed that these remarks constituted prosecutorial misconduct and stated as follows:

> First, we conclude that the prosecutor's introduction was not improper. Her initial words to the trial court and before the prospective jurors were that she represented "the People of the State of Michigan." Moments later, the prosecutor stated that she is "one of your assistant prosecuting attorneys" and then referenced "your prosecuting attorney, David Morse." Read in context, the prosecutor's introductory statements were not improper because it should have been clear to the jury that the prosecutor represents the citizens of Michigan and that, because the jury is likewise comprised of Michigan citizens, she is the jury's prosecutor. See *Milo v Texas*, 214 SW2d 618, 618-619 (Tex Crim App, 1948) (the Texas Court of Criminal Appeals found that a statement to the jury that the prosecutor represents that state of Texas and society was one of "common knowledge" and that it was not subject to objection).
>
> In any event, even assuming misconduct occurred . . .We will not reverse based on prejudice from prosecutorial misconduct that the trial court could have cured with a timely instruction.  Here the trial court could have alleviated any confusion that arose from the prosecutor's references by reminding the jury that the prosecutor represents the State of Michigan and not any private individual or group of individuals.  Because any prejudice from the references could have been cured, we find no error requiring reversal.

*Schauer*, 2004 WL 1672450, *2-3 (internal citations omitted).

To evaluate whether counsel was ineffective in failing to object to the prosecutor's comments, the Court considers the strength of the prosecutorial misconduct claim. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004).  "Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements  were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a  due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999)(stating that "[p]rosecutorial misconduct may

*Schauer v. McKee*
06-CV-13434

warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

The Court finds that Ms. Maas was responding to the Court's request that she state the names of the prosecuting attorneys in her office. The fact that she said "your" assistant prosecuting attorneys is of no consequence. Technically, the prosecuting attorneys are the attorneys of the "People" of the State of Michigan, which includes the members of the impaneled jury.

## 2. Closing Remarks

Second, addressing Petitioner's vouching claim during the prosecutor's closing argument, the Sixth Circuit "has been reluctant to grant habeas petitions on improper prosecutorial statements at closing argument." *Wilson v. Mitchell,* 250 F.3d 388, 399 (6th Cir. 2001). Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg,* 682 F2d at 607-08.

The text in dispute regarding Petitioner's vouching claim is as follows:

21

*Schauer v. McKee*
06-CV-13434

> Now, ladies and gentlemen, I'd also like you to consider when you're considering her credibility – again, is this 15 year old girl so sophisticated that she is able to pull off this lie, this crime, this perjury? Is she so sophisticated that she was able to fool state troopers and Children's Protective Services' workers and prosecutors, that she was able to concoct a lie so believable that brought this case to court? And was s**he able to keep it consistent within reason over the period of the last year in order to pull the wool over everybody's eyes? Is sh**e that sophisticated ladies and gentlemen? No.

Tr., 1/17/03, pp. 575-76.  (Emphasis added).

Again, the Michigan Court of Appeals disagreed that these remarks

constituted prosecutorial misconduct and stated as follows:

> With respect to defendant's argument that the prosecutor engaged in impermissible misconduct when she vouched for the credibility of the victim, we find this argument to be without merit. While a prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness is testifying truthfully, *People v. Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), a prosecutor may argue from the facts that the defendant or another witness is worthy of belief, *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). From our review of the record it is apparent that the prosecutor was not vouching for the victim's credibility on the basis of some special knowledge that she was telling the truth. Rather, the prosecutor was asking the jury to consider the victim's credibility and to consider whether she was sophisticated enough at age fifteen to successfully lie about the allegations. Because it is the jury's duty to determine credibility, *People v McElhaney*, 215 Mich App 269, 287; 545 NW2d 18 (1996), the statement was an appropriate one. The prosecutor pointed out to the jury that the victim was believable because she had been making the same allegations to members of several different agencies for over a year. The prosecutor's suggestion that the facts and the victim's youth warranted the conclusion that she was credible was not improper.

> In a related argument, defendant contends that trial counsel was ineffective for failing to object to the prosecutor's improper vouching. This argument is without merit because trial counsel is not ineffective for failing to advocate a meritless position.

*Schauer*, 2004 WL 1672450, *2-*3. (Internal citations omitted).

*Schauer v. McKee*
06-CV-13434

When assessing the prosecutor's conduct, in addition to the criteria set forth above, the Court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006).   If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief.   *Id.* at 516.   The Sixth Circuit identified four factors to consider when analyzing conduct for flagranc*y*: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally

before the jury; and (4) the total strength of the evidence against the accused."   *Millender v. Adams,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000).

Improper vouching by a prosecutor poses two dangers:

> [S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*U.S. v. Young*, 470 U.S. 1, 18 (1985). A prosecutor's "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Berger v. U.S.*, 295 U.S. 78, 88 (1935).

"Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993).   Improper vouching also occurs when the prosecutor argues

23

*Schauer v. McKee*
06-CV-13434

evidence not in the record, *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992),

or when the prosecutor supports the credibility of a witness by expressing a personal belief

in the truthfulness of the witness' testimony, thereby placing any perceived prestige of the

office of the Livingston County prosecutor, in this case, behind the witness.  See *United*

*States v. Francis,* 170 F.3d 546, 549-50 (6th Cir. 1999).  Generally, improper vouching

involves either blunt comments, *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992),

or comments that imply that the prosecutor has special knowledge of facts not in front of

the jury or of the credibility and truthfulness of witnesses and their testimony.  *United States*

*v. Carroll,* 26 F.3d 1380, 1388 (6th Cir. 1994).

A review of the above stated remarks coupled with the previously discussed hearsay

statements strengthens Petitioner's vouching argument because it exacerbates the

prejudicial impact of those statements.  The prosecutor  suggested to the jury that it was

not possible for the complainant to have given untruthful testimony during trial because she

conveyed her same testimony to the state troopers, the social workers and the prosecutors

in prior statements.  Since these witnesses corroborated the complainant's testimony, (i.e.,

read her statements into evidence or attested to the complainant's prior statements), the

prosecutor's argument is that the complainant must be telling the truth, (i.e. vouching for

the complainant's credibility).  This is the very essence vouching. Through the prosecutor's

statements regarding her belief that the complainant would be incapable of fooling or being

dishonest with law enforcement and state officials prior to trial, she supported the credibility

and truthfulness of the complainant's trial testimony.  The prosecutor's statements to the

24

*Schauer v. McKee*
06-CV-13434

jury clearly suggested that she believed the complainant was telling the jury the truth based

upon her (the prosecutor's) personal and perceived knowledge about the complainant's

capabilities, level of "sophistication," and inability to tell inconsistent stories before trial and

during trial. The prosecutor's statements also demonstrated to the jury her perceived

knowledge and familiarity with state and law enforcement officials and the veracity of the

their testimony. This clearly suggested to the jury that she believed in the credibility of her

witnesses; and that her belief should translate into the jury's belief.

The Court does not agree that the prejudicial nature of these challenged remarks

could be cured by the trial court's general instructions regarding lawyers' statements and

arguments not being evidence:

> The lawyers' statement and arguments are not evidence. They are only
> meant to help you understand the evidence and each side's legal theories .
> . . You should only accept things that lawyers say that are supported by the
> evidence or by your own common sense and general knowledge.

Tr., 1/17/03, pg. 616. Therefore, the Court finds that the prosecutor engaged in improper

vouching.

The Court also concludes that the improper nature of the conduct was obvious and

apparent and, therefore, trial counsel should have objected to the conduct and his failure

to do so was ineffective. In addition, the prosecutor's conduct rendered the trial

fundamentally unfair where there was no evidence of physical injury to the complainant.

There was no evidence of sexual contact. The outcome of the case turned solely upon the

credibility of the witnesses, yet the defense counsel failed to object to, disparage or

challenge the above referenced closing remarks. Therefore, the Court finds that Petitioner

25

*Schauer v. McKee*
06-CV-13434

was prejudiced by counsel's error.   Accordingly, the Court will grant habeas relief on

Petitioner's prosecutorial misconduct claim and ineffective assistance of counsel claim.

### D.  Resentencing

Petitioner claims that the "trial court erred in scoring fifty points for offense

variable (OV ) 7, MCL 777.37, which concerns aggravated physical abuse, because there

was insufficient evidence to support the trial court's finding that defendant threatened

physical violence against the victim or her family."   *Schauer*, 2004 WL 1672450, *3.  The

Michigan Court of Appeals disagreed and held as follows:

> At the time of the offense, OV 7, MCL 777.37, required the sentencing court to assign fifty points if it found that the victim was treated with "terrorism, sadism, torture, or excessive brutality . . ."
>
> Here, evidence presented at trial supported the trial court's finding that defendant threatened physical violence against [the] victim or her family. The victim testified that the sexual assault  began when she was seven or eight and that they continued until just after she turned fifteen. Victim testified that, after the sexual assault that occurred on January 5, 2002, defendant told her that, if she ever told anyone, "he would hurt [the victim], something bad would happen to [her] or one of [her] family members." The victim testified that ever since the sexual assaults started, defendant has threatened her and her family, and that she was afraid something would happen to her or a family member of she told anyone.  Trooper Coulter, who interviewed the victim, testified that the victim said that defendant told her on one occasion that "if she told anybody he would kill her or he should go to jail and she would end up in foster car."   Given this evidence and in light of the definition of terrorism, we conclude that the trial court did not err in scoring OV 7.   " A scoring decision is not clearly erroneous if the record contains any evidence in support of the decision."
>
> To the extent that defendant further argues that the threats must occur during the offense, we find no statutory language mandating this conclusion. Although for conduct to be deemed terrorism it must be designed to increase a victim's fear and anxiety suffered during the offense, MCL 777.37(2)(a), it does not follow tht defendant's previous threats, including a threat to kill,

26

*Schauer v. McKee*
06-CV-13434

would not increase the victim's fear and anxiety during the commission of the instant offense.  Accordingly,  defendant's argument lacks merit.

*Id.*

Claims that arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law.  See *Lucey v. Lavigne,* 185 F.Supp.2d 741, 745 (E.D. Mich. 2001).  Petitioner challenges the scoring of his sentencing guidelines under state law.

A claim that the state sentencing guidelines were incorrectly scored fails to state a claim upon which federal habeas relief can be granted.  See, e.g., *Cook v. Stegall,* 56 F.Supp.2d 788, 797 (E.D. Mich. 1999); see also *Austin v. Jackson,* 213 F.3d 298, 301 (6th Cir. 2000); *McPhail v. Renico,* 412 F.Supp.2d 647, 656 (E.D. Mich. 2006). State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  See *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1354 (6th Cir. 1993);  *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987).  Since there has been no showing that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law,  Petitioner is not entitled to habeas relief on this state law sentencing issue.

To the extent Petitioner challenges the proportionality of his sentence, the argument does not furnish a basis for habeas relief.   Michigan law says there must exist proportionality between an offense and the sentence.  *People v. Milbourn,* 435 Mich. 630, 636; 461 N.W.2d 1 (1990). ("[A] given sentence can be said to constitute an abuse of

27

*Schauer v. McKee*
06-CV-13434

discretion if that sentence violates that principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."). However, the United States Constitution "contains no strict proportionality guarantee," and therefore, a claim that the sentencing court violated Michigan's principles of proportionality is not a cognizable claim under habeas review. *Harmelin v. Michigan,* 501 U.S. 957, 965 (1991).

It is now well settled that the Eighth Amendment "does not require strict proportionality between crime and sentence." *Id.* at 1001; *United States v. Layne,* 324 F.3d 464, 473 (6th Cir. 2003). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Harmelin v. Michigan,* 501 U.S. at 1001. Because Petitioner was convicted of criminal sexual conduct, which is punishable by life imprisonment or any term of years pursuant to Mich. Comp. Laws §750.520b(2)(a), and Petitioner was sentenced to a term of fifteen to thirty years for this offense, the sentence he received is in no way "grossly disproportionate" to the crime.

## IV. CONCLUSION

This Court finds that the state court's decisions regarding the specified ineffective assistance of counsel claim and prosecutorial misconduct claim in this case were contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and finds that Petitioner has established that he is presently in custody in violation of the Constitution or laws of the United States. On that basis, this Court conditionally grants Petitioner's petition for a writ of habeas corpus.

28

*Schauer v. McKee*
06-CV-13434

**IT IS ORDERED** that Petitioner's Application for Writ of Habeas Corpus is conditionally

**GRANTED**.  Unless the State takes action to afford Petitioner a new trial within ninety (90) days

of the date of this Order, he may apply for a writ ordering Respondent to release him from custody

forthwith.


                              S/Arthur J. Tarnow
                              Arthur J. Tarnow
                              United States District Judge

Dated:  September 30, 2009


I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 30, 2009, by electronic and/or ordinary mail.

                              S/Catherine A. Pickles
                              Judicial Secretary

29